WM. JACKSON *v*. J. W. JARRATT *et al.*

(*Nashville,* December Term, 1931.)

Opinion filed July 23, 1932.

W. C. Rogers, for plaintiff in error.

Charles L. Neely, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

This is a compensation case, heard before Judge H. W. Laughlin, Circuit Judge. It is here on a petition for a writ of mandamus, alleging, in substance, that the case was regularly heard during the January term, on the 17th day of March, 1932, and decision announced by the trial Judge on the following day, but that the judgment was not then spread of record on the minutes; that the January term expired on the 19th day of March, and on the 2nd day of April of the succeeding term, opening on the 21st day of March, upon an order being made for the

entry of the judgment *nunc pro tunc,* as of the day of its announcement in the preceding term, a motion for a new trial and time for filing a bill of exceptions was made and overruled, on the ground that it came too late, the term having expired, and the Court being without jurisdiction. It was charged that the effect of the entry of this *nunc pro tunc* order at this time, and the overruling of the motions, was to deprive petitioner of his right of appeal. This Court ordered the issuance of an alternative writ.

The answer of Judge Laughlin shows that the ''judg ment was rendered by him in the sum of $45,'' on the 18th day of March, and that ''on that date the original court file shows judgment for the plaintiff for $45 and costs.'' He says, further, that he keeps a docket known as ''Judge's Bar Docket,'' in which is put down all actions taken by him, and this contains, as of March 18th, the entry, ''From yesterday, judgment for the plaintiff for $45.''

The answer further shows that no motion for a new trial was entered during the January term, but that on March 23rd ''a paper purporting to be a motion for a new trial was filed with the Clerk and noted on the docket. The motion was called up for hearing and the Court announced at that time that judgment had been given in the January term, and that he was without jurisdiction to entertain the motion.'' The answer then proceeds:

''After the entry of the *nunc pro tunc* decree, which was on the 2nd day of April, 1932, the plaintiff attempted to and did file what purported to be a motion for a new trial, which was filed April 6, 1932. On the hearing of this motion, the Judge again announced the same action he had taken previously, and that was that this cause came on this day to be heard on motion for a new trial,

whereupon the Court declined to entertain said motion, but exactly the same action was taken when the proposed motion of March 23rd was called on the motion docket. The minutes, as alleged in the bill, had not been signed at the time of the filing of the petition for the mandamus. Everything was done in regular course, and the court refused to entertain the motion because it was not made in the January term in which the judgment had been announced in the cause. No motion had been made and no order had been presented to extend the term or submit a motion for a new trial.''

█ Counsel for petitioner say that, ''the only question involved in this matter is the construction of section 8980, New Code, or Section 4847, Shannon's Code [which reads, 'A rehearing can only be applied for at the term of the Court at which the decree sought to be affected is rendered'] and particularly the word 'rendered,' as used therein. . . . Is the judgment 'rendered' when announced, or when spread upon the minutes?''

''Rendered'' means expressed or announced in a conclusive manner and with decisive effect, certainly so when at the same time notation of it is made on a judgment docket, or other more or less permanent memorandum record kept by the Judge for the purpose. ''The rendition of judgment, and the entry of judgment, are different and distinct, each from the other. The former is the act of the Court, while the latter is the act of the Clerk of the Court. . . . To render judgment is to return or give judgment; and it cannot be said, in our opinion, that the phrase, in any of its forms, includes the idea of making a written entry or record of a judgment.'' *Anderson* v. *Mitchell,* 58 Ind., 594; *Gray* v. *Palmer,* 30 Calif., 416.

Insisting that the word "rendered" in the statute means "entered on the minutes," counsel for petitioner relied on expressions in recent opinions of this Court (*Feldman* v. *Clark*, 153 Tenn., 373; *England* v. *Young*, 155 Tenn., 511; *Shipley* v. *Barnett*, 161 Tenn., 437) to support this insistence.

The expressions relied on are without the determinative significance suggested. In all of these cases an entry of the judgment had been made, and the Court was passing on the situation thus presented. The terms "rendered" and "entered" were used without consideration of, or reference to, any distinction in meaning, or effect. as between the terms.

In Ency. of P. & P. Vol. II, P. 249, it is said:

"The prevailing rule construes a statute requiring an appeal to be taken within a defined statutory period after the 'rendition' of the judgment as mandatory (citing numerous authorities), and requires the time to appeal to be computed from the date of the actual rendition, and not from the entry."

And, again, "A judgment is 'rendered' within the meaning of such statutes, when ordered or pronounced by the Court, and not when entered in the judgment book." Citing *Gray* v. *Palmer*, 28 Calif., 416; *State* v. *Meacham*, 6 Ohio Cir. Ct. Rep., 31; *Anderson* v. *Mitchell*, 58 Ind., 592 (*supra*); and *Buck* v. *Holt*, 74 Iowa, 294.

In Rawles Bouvier Vol. III, p. 2880, it is said, "A judgment is 'rendered' when the Court makes an order therefor," citing *State* v. *Briesman*, 12 Mont., 11, 29 Pac., 534.

These and other definitions and holdings would seem to support the view that the word "rendered" used in our statute above quoted, means announced or ordered. However, we are constrained to hold that the right to move

for a new trial, and an appeal, was erroneously cut off under the undisputed circumstances of the case before us.

Conceding that the strict definition of the word "rendered" is as above stated, we are of opinion that its use in our statute contemplates that the rendition of the judgment will be carried into binding and effective form by entry upon the minutes, consistently with our numerous holdings that the Court speaks authoritatively only through its records. For example, *Fraker* v. *Brazelton,* 80 Tenn., 280, 281; *State* v. *True,* 116 Tenn., 313.

■ While motion for a rehearing must be made at the same term the judgment is rendered, not only because the statute above quoted so requires, but because of the provisions of Chap. 65, Acts 1885 (New Code 9047, 9048), construed in *Feldman* v. *Clark, supra,* limiting proceedings for appeal, including the motion for a new trial, to the judgment term, or the thirty day extension provided, yet the party adversely effected is not compelled to move until legal effect is given the rendition of the judgment by entry thereof on the minutes. No recovery or other action may be based on a judgment, nor need any relief from it be sought, until the judgment "rendered" has been entered, so as to give it binding effect as a judicial act.

This view is not in conflict with cases which hold that where a statute requires an appeal to be taken within a named period after the judgment is "rendered," as distinguished from "entered," the limitation relates to the date of rendition. While these cases hold that when entered later than when rendered the limitation relates back and runs from the rendition, a judgment which is merely rendered becomes inoperative, unless followed by entry within the term of its rendition, and it can be given effect

subsequently only by entry of a judgment *nunc pro tunc,* as has been attempted in this case.

■ *Anderson* v. *Mitchell, supra,* was a case in which the judgment was entered *nunc pro tunc,* this order not being made until after the expiration of the period fixed by statute within which an appeal might be taken, and in that case the Court, holding that the limitation statute referred to the date of rendition, found that the appeal came too late. But, in that case the order *nunc pro tunc* was made by ''agreement of the parties'' and no question of the propriety of the making of this order arose.

In *Ludlow* v. *Johnson,* 3 Ohio, 553, 17 Am. Dec., 609, the effect of a *nunc pro tunc* order upon the right of a party to appeal was considered, and the Court, quite pertinently to the present situation, said: ''If such judgment was to have the same effect to all intents, as if actually entered in May, the party against whom it was rendered would be deprived of his right of appeal. This right is secured by statute, the party appellant giving bonds, within thirty days after the term, in double the amount of the judgment. The bond could not be given before August, for there would be no judgment of record, no means of ascertaining the amount. And if given after August, it would be too late, more than thirty days after the May term of which the judgment is to be considered having expired. This consideration induced the court, in the case of *Gosforths' Administrators* v. *Hezekiah Flint,* to decide that so far as respects the right of appeal, at least, a *nunc pro tunc* judgment must be considered as a judgment of the term when actually entered.''

In harmony with this view, in *Monson* v. *Kill,* 144 Ill., 248, the Court held that there was no error in entering a decree *nunc pro tunc,* thereby restricting the time in

which to effect an appeal, when the party was not thereby prevented from effecting his appeal. The clear implication is that the holding would have been otherwise, if the effect of the *nunc pro tunc* order had been to destroy the right of appeal.

In *Exley* v. *Berryhill*, 31 Minn., p. 121, passing on a motion to dismiss an appeal because taken after the expiration of the time prescribed by statute from the date of the rendering of the judgment, the Court held that for purposes of appeal the time must be computed from the entry of the judgment, saying, "the judgment must be made a matter of record in order to limit the time of taking appeal, and the time does not begin to run until the entry thereof."

As already indicated, failure to have given the "rendered" judgment effect at the then term was sought to be cured in this case by an order for its entry *nunc pro tunc*.

Under proper conditions such an order may properly be made and its effect would be to relate back and cure the omission of the entry at the former term. But, the making of an order *nunc pro tunc* is a matter of discretion, of grace. Says Rawles Bouvier, Vol. III, p. 2385, "Leave of Court must be obtained to act in legal proceedings *nunc pro tunc*; and it is granted to answer the purposes of justice, but never to do injustice." *Monson* v. *Kill, supra,* is cited.

In 34 C. J., page 71, it is said that a judgment will not be directed to be entered *nunc pro tunc* "to enable one party to gain an advantage over the other party to which he would not have been entitled at the proper time for entering the judgment,"—and, further (p. 72), "A motion for entry of judgment *nunc pro tunc* is addressed

very largely to the discretion of the Court, and should be granted or refused as justice may require in view of the circumstances of the particular case.'' Many cases are cited in the notes, among others the leading case of *Mitchell* v. *Overman,* 103 U. S., 62, 26 L. Ed., 369, from which the text is, in substance, taken. Running through all of the authorities discussing this now for then order is clear recognition that it will not be made when substantial rights of parties will be thereby cut off. See Ency. P. & P. Vol. 18, pp. 458-463, where, as elsewhere, it is emphasized that the discretion of the Court will not be exercised in favor of an order *nunc pro tunc* when the delay was the result of neglect or mistake of the party in whose favor the judgment was rendered.

There are two classes of cases in which *nunc pro tunc* judgments are granted, (1) where the judgment has previously been actually rendered, as here, and (2) where there has been delay in rendition of a judgment when the case has been otherwise heard and disposed of—as after a verdict. In the first class the scope of the *nunc pro tunc* order is confined to the thing previously done, the judgment actually rendered. In this class of cases, to which the one before us belongs, it would not be proper for the judgment to recite or contain other matter than that actually originally decided. Therefore, the *nunc pro tunc* order may not be so reformed, or re-framed, as to include consideration of a motion for new trial, or the granting of an appeal.

It therefore becomes the duty of this Court to grant the writ, and set aside the order *nunc pro tunc,* with the result that the case stands on the Circuit Court docket undisposed of, for re-trial in due course as upon a continuance, or following a mistrial.