HEDGES-WALSH-WEIDNER COMPANY *v.* CHARLES HALEY.

(*Nashville,* December Term, 1932.)

Opinion filed January 10, 1933.

C. G. MILLIGAN, for plaintiff in error.

M. F. VALENTINE, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

The trial judge awarded compensation for total permanent disability, resulting from injury on February 24, 1930. The employer, an insurance carrier, appealed and insists (1) that the alleged permanent disability is result of disease unrelated to injury arising out of and in the course of employment, and (2) that there was a settlement and satisfaction of the claim approved by the circuit judge in the manner provided by section 27 of the Compensation Act.

This claim for compensation is presented by petition

filed January 7, 1931. In it the petitioner alleges injury February 24, 1930. It is said that he strained the ligaments in his side causing permanent injury for which a claim was made for compensation for a temporary disability based upon statements of his employer's physician and for which he received $125. In this connection we quote from the petition:

"Said payment for temporary disability was made and agreed to upon an erroneous belief as to the petitioner's real physical condition. At the time of the above-mentioned payment petitioner undertook to return to his work but was never able to perform service because of his injury of February 24th."

The prayer was for an award for total permanent disability to be credited with the sum paid in settlement of the temporary total disability. As to the first proposition relied on by the defendants:

The trial judge found that petitioner's disability resulted from injury, not disease. That was an issue. The question is not open to review because there is some evidence to sustain the finding of the trial judge. However, we refer to some and quote some of the evidence because of its relation to the second proposition.

It was stated in the petition that a claim was made for compensation for temporary disability based on statements of the employer's physician. Dr. Haskins, the company's physician, testified that petitioner came to him the first time on March 3, 1930, complaining of pain in his right side and chest, saying that he had hurt himself, and the doctor said, "It looked to me like a condition we call intercostal neuralgia, a nerve condition, the nerves that run around between the ribs from the

spine, there was no sign of injury, I could not make out an injury and it looked to me like this nerve condition."

The petitioner, complaining of pain in his side, saw Dr. Currey July 14. We quote Dr. Currey:

"I never could make a true diagnosis, unless it was one of two things, ruptured ligaments or injury to the intercostal nerves."

Dr. Hager, who examined petitioner four or five months after February 24, found him with a pain in his side. This doctor expressed the opinion that the pain was the result of a strained intercostal muscle.

Dr. McPheeters examined Haley in January, 1931, and testified that the disability was result of a cerebrospinal infection.

The petitioner testified that while at work lifting a heavy flask, a device used by moulders at their trade, a pain struck him in the side. He continued work that day but was unable to resume it on the next day and called Dr. Nelson, who treated him until Dr. Haskins was called, then both treated him. After some time he returned to work but had to quit for a week. He returned again and worked until July.

The time-sheets kept by S. B. Northington were introduced and Northington testified that petitioner worked from March 23 to July 9. He also testified that petitioner's earnings for twelve months preceding February 25, 1930, amounted to $983.26 and from March 23 to July 9, 1930, $360.76.

Petitioner testified that he was not able to work after July 9 and Dr. Currey corroborated his statement saying, "There was a spasmodic condition in Haley's side caused by ruptured ligaments that affected the diaphragm or the intercostal nerves and knocked him out and he would keel over when attempting to lift or stoop."

For three weeks disability beginning February 25, petitioner made claim and received as compensation $21. In October a second claim for compensation was made and about which we quote from petitioner's testimony:

"Q. Your lawyer and the lawyer for the insurance company and you settled and put down a decree on the settlement and agreed you were able to go back to work? A. I agreed to go and do light work.

"Q. They paid you another $126? A. They paid me $126.

"Q. The papers were signed in this courtroom before His Honor Judge Miller? A. I signed the settlement.

"Q. His Honor Judge Miller questioned you then about the settlement and do you remember Judge Miller signed those papers? A. Yes sir.

"Q. And you agreed there you were able to go back to work and the disability was removed? A. The judge never did ask anything in regard to work. He asked if the settlement was satisfactory. I told him 'yes' which I thought I was able to go back to work. I was honest."

The settlement referred to is in the record and reads:

"SETTLEMENT AND PETITION
    "Disability Case
"In the matter of Compensation for Injury
  "To  CHAS. HALEY, Employee        )
"Against HEDGES-WALSH-WEIDNER,  ) No. 1564
            Employer                ) In Circuit
and      MARYLAND CASUALTY          )  Court
            COMPANY, Insurer        ) Hamilton
                                    ) County,
                                    ) Tennessee

"Final Settlement Release

"MARYLAND CASUALTY COMPANY

"IN THE MATTER OF COMPENSATION FOR INJURY

"SETTLEMENT AND PETITION

"The undersigned, being the only parties interested in the above entitled matter, hereby petition the Court for approval of the following final settlement, and agree and represent to the Court as follows:

"That they are subject to the provisions of Chapter 123 of the Acts of the General Assembly of the State of Tennessee for the year 1919 and amendments thereto.

"Employee's address: 912 West Fortieth Street

"Employer's address: 27th & Broad Streets

"Employee's age: 54 Weekly wage at time of injury $21

"Date of injury, July 9, 1930 Disability began July 10, 1930

"Disability ended October 1, 1930, at the wage of same per week

"Accident occurred at 27th & Sidney Sts.,

"Injuries consisted of strained muscles of back

"Nature of disability Temp. Total

"Therefore, it is hereby agreed that the employee is entitled to and has received compensation for said injury from the employer beginning July 10, 1930, at the rate of $10.50 per week for 12 weeks, amounting to $126, receipt of which the employee hereby acknowledges.

"The employee hereby acknowledges that he has received to date all medical and surgical treatment to which he is entitled under Section 25 of the Compensation Act.

"Now, therefore, in consideration of the compensa-

tion benefits and medical attention receipt of which has hereinbefore been acknowledged, I, Charles Haley, Employee, do hereby release and forever discharge the Hedges-Walsh-Weidner Co., Employer, and Maryland Casualty Company, Insurer, from any and all liability under the Workmen's Compensation Act of the State of Tennessee or otherwise.

"Dated this 2nd day of October, 1930.

(Signed) CHAS. HALEY, Employee

" HEDGES-WALSH-WEIDNER Co.,

Employer

"WITNESSED BY　　　　　By J. H. REDDY

"T. J. DAVIS　　　"　MARYLAND CASUALTY COMPANY

Insurer of Employer

"T. J. DAVIS　　　By J. H. REDDY

"IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

"IN THE MATTER OF COMPENSATION FOR INJURY:

"To　Charles Haley　Employee
"Against Hedges-Walsh-Weidner Co., Employer
and Maryland Casualty Company, Insurer

"ORDER APPROVING FINAL SETTLEMENT

"Upon reading the foregoing final settlement and release and joint petition of the parties, and it appearing to the Court that the above named employee has received all medical benefits of the Workmen's Compensation Act to which he is entitled, and $126 and that he has released the above named employer and insurer from all liability under said Act.

"It is therefore ordered, that said settlement be and

the same is hereby approved that said employer and insurer pay all costs for which execution may issue.

"L. D. Miller*

"Judge of Circuit Court

"Dated at Chattanooga, Tennessee, Oct. 2, 1930.

The defendants by answer set up for defenses (1) that by section 37 of the Compensation Act petitioner is precluded from reopening the settlement for the temporary total disability covering a period of less than six months' duration, and (2) that there. was a full settlement and satisfaction of petitioner's claim under section 27 of the Compensation Act.

Judge Miller, who approved the settlement October 2, disposed of the issues made by the defense of accord and satisfaction and *res adjudicata* upon agreed facts. And the trial judge held that:

"1. The plea of settlement, accord and satisfaction and *res adjudicata* are not well taken because of the failure to file the settlement and order, approved by the court, as provided by statute.

"2. The *nunc pro tunc* order filed on the 19th day of January, 1931, dating the court's order and settlement as of and on the 2nd day of October, 1930, is a mere nullity and without force or effect in law and same is ordered here and now vacated and set aside, and that the order set out in paragraph 1 of the agreed facts is a nullity and without force or effect in law.

"3. This cause be set for hearing on Saturday, April 25, 1931, upon its merits."

The judge rested his decision on the opinion in *Wilkinson* v. *Shale Brick Corporation,* 156 Tenn., 373, in which the court held a settlement ineffective because not made in compliance with section 27 of the Compensation Act. The section reads:

"That the interested parties shall have the right to settle all matters of compensation between themselves, but all settlements, before the same are binding on either party shall be approved by the judge of the Circuit Court of the county where the claim for compensation under this Act is entitled to be made. Upon such settlement being approved, judgment shall be rendered thereon by the court and duly entered by the clerk."

In *Wilkinson* v. *Shale Brick Corporation* the court said:

"Section 27 of the Act contemplates a judicial proceeding, and where a claimant is not represented by counsel, the circuit judge should require his presence in open court, in order that he might interrogate him with respect to the settlement before giving his approval thereto, or should, at least, require notice to be served on the employee, stating the time and place when the employer would ask the court to make their agreement the judgment of the court. Were it otherwise this provision of the act would amount to no more than a useless formality.

"This case illustrates the advisability of such a procedure. The same judge, who formally gave his approval to the agreement, by which settlement was made for $180, awarded compensation in excess of $4,000 when the claimant was personally interrogated and examined by him."

*Wilkinson* v. *Shale Brick Corporation* is distinguishable upon its facts. There the employer proposed to set up in bar of the claim for compensation a compromise agreement with his permanently injured employee which he had settled upon a consideration so inadequate as to induce the trial judge to declare it fraudulent in law. Moreover the employee had no benefit of counsel, did

not appear in court, and was not present in court, and was not present when the employer procured the individual, not the judicial, approval of the judge. Nothing was done to confer jurisdiction upon the court and give it authority to enter an order in the case. And so on appeal it was held the settlement was not judicially approved and not final because:

"This provision refers to the person presiding over the circuit court in his judicial as distinguished from his individual capacity. His act in writing his approval upon the instrument involved had no judicial effect since the circuit judge speaks only through his minutes."

In that case the court emphasized the fact that the judicial power can only be exercised by the court as distinguished from judge.

In the case before us the employee was represented by counsel, appeared in court, was interrogated and the settlement approved by the judge after examination made in open court, and the costs were adjudged in the order approving the settlement, signed by the trial judge in open court. Nothing remained to be done but formally enter the settlement and order approving it upon the minutes. Had the entry been made then, its judicial force would have been conclusive. It is insisted for petitioner that its subsequent *nunc pro tunc* entry was unauthorized. As said in *Jackson* v. *Jarrett,* 165 Tenn., 76, 52 S. W. (2d), 139:

"There are two classes of cases in which *nunc pro tunc* judgments are granted: (1) Where the judgment has previously been actually rendered, as here; and (2) where there has been delay in rendition of a judgment when the case has been otherwise heard and disposed of —as after a verdict. In the first class the scope of the

*nunc pro tunc* order is confined to the thing previously done, the judgment actually rendered. In this class of cases, to which the one before us belongs, it would not be proper for the judgment to recite or contain other matter than that actually originally decided. Therefore, the *nunc pro tunc* order may not be so re-formed or re-framed, as to include consideration of a motion for new trial, or the granting of an appeal.''

The *nunc pro tunc* entry was strictly limited to the order of the court made by consent and approval of both parties on October 2. The subsequent entry of that order did no more than supply the omission to enter on the minutes an omission caused by the negligence or oversight or error of the employer's attorney. The object of entries *nunc pro tunc* is to supply such omissions. 18 Ency. Pl. & Pr., 458. Under the circumstances the petitioner's presence was not essential to the validity of the entry *nunc pro tunc*. The action of the circuit judge approving the settlement had become final. No facts are presented suggestive of reason for declaring it void. The settlement and the judgment of approval were in writing, verified by the signature of the trial judge. The *nunc pro tunc* order was made by the judge who gave judicial approval of the settlement on October 2, 1930. In *Rush* v. *Rush,* 97 Tenn., 282, it is said:

''All Courts have the right, and it is their duty, to make their records speak the truth, and a Court, therefore, in a proper case, of its own motion, may order a *nunc pro tunc* entry to be made, and no sound reason can be suggested why they should not exercise this right and discharge this duty, upon the suggestion of one whose rights are impaired by the failure of the record to state the truth. 1 Freeman on Judg., Sec. 64; *Balsh*

v. *Shaw,* 7 Cush., 282; *Crim* v. *Ressing,* 89 Cal., 478. And the lapse of time between the announcement of judgment and the making of this motion is of no importance; that which is important is, that the proof be clear and convincing that the judgment which it is sought to have entered is the one pronounced in the cause. 1 Freeman on Judg., Sec. 61.''

Upon the facts disclosed, the trial judge properly ordered entry *nunc pro tunc* of the settlement voluntarily made by the parties and approved by the court. The record discloses nothing to affect the validity of the settlement and therefore the trial judge was without power to set aside the entry *nunc pro tunc* or to declare the settlement void.

*State* v. *True,* 116 Tenn., 294, and similar authorities referred to by counsel for petitioner rest upon the proposition that judicial acts can only be shown by the minutes and that parol evidence to prove judicial action is not admissible. The rule and the reason for it are well expressed in *Bank* v. *Patterson,* 8 Humph., 363. It serves its purpose of preventing the subversion of justice by leaving judicial records open to attack by parol evidence. Just as the *nunc pro tunc* entry on the minutes of what the presiding judge knows was done but left unrecorded through inadvertence or error.

It appears from petitioner's admissions made in his petition and in his testimony that he voluntarily and with the approval of the circuit judge, as provided by section 27 of the Compensation Act, settled and received compensation for temporary total disability covering a period not exceeding six months. By section 37 of the Compensation Act, all of such settlements are declared

final and not open to readjustment. *McCaslin* v. *Heath,* 157 Tenn., 380.

For the reasons stated, the trial judge erred in setting aside the settlement and awarding additional compensation.

Reversed and dismissed.