JAMES A. NEELY

*v.*

STATE OF TENNESSEE.

356 S. W. (2d) 401.

(*Nashville,* December Term, 1961.)

Opinion filed April 4, 1962.

54

HARVEY M. YAFFE, Memphis, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, Nashville, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

Plaintiff in error, hereinafter called defendant, was convicted of murder in the second degree for killing Percy Smith, and his punishment fixed at not more than 15 years in the penitentiary. He appealed in error and insists the evidence preponderates against the verdict and in favor of his innocence.

The Attorney General, on behalf of the State, has made a motion to dismiss the appeal or affirm the judgment upon the ground that "defendant failed to file his motion for a new trial within thirty (30) days of the verdict as

required by T.C.A. 27-201." This raises the question as to the proper construction of this statute which, so far as we are aware, has not heretofore been determined.

From the minute entries of the Trial Court in the record before us, it appears that the trial of defendant was completed, the jury returned their verdict, and it was recorded May 5, 1960, in a minute entry as follows:

"Comes the Attorney General on the part of the State and the defendant in proper person and by counsel of record, whereupon there comes into open Court under charge of their proper officer the same jury heretofore selected to try the above cause, who upon their oath do say: WE THE JURY FIND THE DEFENDANT GUILTY OF MURDER IN THE SECOND DEGREE AS CHARGED IN THE INDICTMENT AND FIX HIS PUNISHMENT AT IMPRISONMENT IN THE PENITENTIARY FOR NOT MORE THAN FIFTEEN YEARS: Thereupon the Defendant through his counsel of record, moves the Court for a new trial herein, which motion is set for hearing on June 17, 1960. O/c Defendant's bond is raised to SEVENTY FIVE HUNDRED DOLLARS."

Thus, it will be noted no judgment was entered on the verdict. Later minute entries show that defendant's motion for a new trial, set for June 17, 1960, was continued, or reset, a number of times and finally heard and overruled October 21, 1960, and on that day judgment was entered on the verdict. Defendant saved a bill of exceptions, in which his motion for a new trial was incorporated. It shows the clerk marked the motion: "Filed 10-21-1960."

The argument for the State is that this shows defendant's motion for a new trial was not filed until October 21, 1960, or 168 days after the entry of the verdict; that T.C.A. sec. 27-201 required the motion to be filed within 30 days from the entry of the verdict, and after a lapse of that period, without any motion being filed, the verdict became final, or passed beyond the court's control, so that the court had no jurisdiction to entertain a motion for a new trial. T.C.A. sec. 27-201 is in these words:

"A rehearing or motion for new trial can only be applied for within thirty (30) days from the decree, verdict or judgment sought to be affected, subject, however, to the rules of the court prescribing the length of time in which the application is to be made, but such rules in no case shall allow less than ten (10) days for such application. The expiration of a term of court during said period shall not shorten the time allowed."

The part here relied on by the State is: "A rehearing or motion for a new trial can only be applied for within thirty (30) days from the decree, verdict or judgment sought to be affected." Does this mean that the motion for a new trial must be filed within 30 days from the entry of the verdict, or within 30 days from the entry of the judgment on the verdict? Or does it treat a verdict and a judgment as one and the same thing?

There is, of course, a fundamental difference between a verdict and a judgment, the one being the jury's finding on the facts; and the other, the Judge's determination of the case upon the verdict. A verdict, before judgment has been entered thereon, has no finality, cannot be executed (*Sharp v. State,* 117 Tenn. 537, 97 S.W.

812), and cannot be pleaded in bar as *res judicata* or offered in evidence as collateral estoppel. *Smith v. Mc-Cool,* 83 U.S. 560, 21 L.Ed. 324; 2 Freeman on Judgments (5th Ed.), sec. 718; 30A Am. Jur., Judgments, sec. 339.

■ When a verdict is entered, the court should enter judgment thereon, if judgment be not arrested or a motion for a new trial granted (T.C.A. sec. 40-2701); but ''until the judgment is entered or the cause in some way disposed of, it is still pending and stands continued with the unfinished business until the next term'' (*Greenfield v. State,* 66 Tenn. 18, 19). *Sharp v. State,* supra; *State ex rel. Underwood v. Brown,* 193 Tenn. 113, 119, 244 S.W. 2d 168.

Under the common law rule, all judgments and decrees were deemed ''in the breast of the court'' during the whole of the term and could be set aside at any time during the term, however long it lasted. This power of the court over its judgments and decrees ended with the end of the term. That rule was changed by statutes (now T.C.A. sec. 27-312) making judgments and decrees final after 30 days from their entry if no motion for a new trial was filed within that time. *Jackson v. Jarratt,* 165 Tenn. 76, 81, 52 S.W.2d 137; *Louisville & N. Railroad v. Ray,* 124 Tenn. 16, 26-29, 134 S.W. 858.

■ But this statute (now T.C.A. sec. 27-312), making judgments final if no motion for a new trial is filed within 30 days from their entry, *''does not apply to verdicts''* (italics ours). *Prince v. Lawson,* 167 Tenn. 319, 321, 69 S.W.2d 889.

■ It is customary to enter a judgment when the verdict is entered. But the judgment may be entered on the verdict later at any time during the term, or even

at a subsequent term. *McCall v. State,* 167 Tenn. 329, 333, 69 S.W.2d 892; *James v. State,* 196 Tenn. 435, 437, 268 S.W.2d 341; *Louisville & N. Railroad v. Ray,* supra. But it cannot be entered *nunc pro tunc* so as to cut off the right of appeal. *Jackson v. Jarratt,* supra.

■ A motion for a new trial may be filed after entry of the verdict and before entry of the judgment, or after judgment is entered on the verdict. But *"the losing party is not required to enter his motion for a new trial until after a judgment is entered"* (italics ours; Green, C. J., *McCall v. State,* supra). *Louisville & N. Railroad Co. v. Ray,* supra, 124 Tenn. 16, 26-29, 134 S.W. 858, Ann.Cas. 1912D, 910; *Feldman v. Clark,* 153 Tenn. 373, 284 S.W. 353; *Jackson v. Jarratt,* supra, 165 Tenn. 76, 81, 52 S.W. 2d 137; *McAlester v. Monteverde,* 22 Tenn.App. 14, 17, 115 S.W.2d 257.

■ Thus, the established rule of practice, under our statute (now T.C.A. sec. 27-312), and the above cited cases construing it, is that if a judgment is not entered when the verdict is recorded, the losing party, at his option, may file his motion for a new trial after entry of the verdict and before entry of the judgment, or may wait until after entry of the judgment and file his motion for a new trial within 30 days after such entry.

■ Such was the practice under our statutes (now T.C.A. sec. 27-312) when the statute, here relied on by the State, was first enacted as section 8980 of the 1950 Code Supp., and was re-enacted without change as T.C.A. sec. 27-201. Thus, T.C.A. sections 27-201 and 27-312 should be construed together, and, so construing them, we think the intent of section 27-201 was to conform to, rather than to change, the well-established practice under T.C.A.

sec. 27-312. To say the least, it seems too ambiguous to be given the drastic effect contended for.

■ But, in any view of this statute, we think defendant's motion for a new trial was filed in time; that is, "within 30 days from the judgment sought to be affected." For these reasons, the State's motion is overruled.

We come to the merits of the appeal. The State's proof was that the defendant shot and killed Percy Smith with a .38 caliber Smith & Wesson revolver at about 8:30 P.M. May 30, 1959. Defendant did not deny the killing, but sought to justify or extenuate it, upon the claim that Smith had been having an affair with his wife for three years, and that he killed him in self-defense.

They were persons of color and, some three years before, had lived together, or "shared an apartment," and that is when this liaison began between Smith and defendant's wife, Trueheart. She testified as a witness for defendant and said she had been having the affair with Smith some three years; and defendant knew of it all the while and had been seeing Smith coming around his home and with his wife very often.

On the evening of the homicide defendant and his wife were in his pickup truck, she driving, going from their home in Shelby County to see his sister in Mississippi. As they drove out the driveway at their home, they saw Smith driving in his Ford car, and she pulled the truck out into the road behind Smith's car. After following Smith's car for a while, she passed it and as they were passing, defendant got down on the floorboard and hid himself in the truck so that he could not be seen by Smith.

■ Smith, alone in his car, followed defendant's truck along the Raleigh-LaGrange road until they reached its intersection with U. S. Highway 70. At this intersection a Buick automobile, proceeding ahead of defendant's truck, had stopped for the traffic light, and defendant's wife pulled the truck out from behind the Buick and stopped on the left side of it, and Smith's car stopped some 10 or 15 feet behind the Buick on his right-hand side of the road.

At that time, while the Buick on the right and the truck on the left side of the road were stopped waiting for the traffic light to change, two highway patrolmen came along Highway 70 in a squad car and, seeing the car and truck standing there side by side in the road, the patrolmen stopped and told the parties not to block the road.

At that moment defendant jumped out of his truck, where he had been hiding with his pistol in his hand, and ran back to the left door of Smith's car, its window being open, began firing his pistol into the car, and fired three shots, one bullet entering the left door and another through the seat and the third struck Smith in the back near the left kidney just below the belt, ranged upward through the body to the right, and lodged just under the skin near the right nipple.

The patrolmen arrested and disarmed defendant, and called the sheriff and an ambulance. It appears that Smith, apparently trying to escape out the right door, on being shot, fell out the right side of the car into the ditch, where his body was found. He was unarmed and no weapon was found in his car. The medical proof was that the bullet, entering his back and ranging upward, severed a large vein causing internal hemorrhage and death.

 We think the State's proof made out a case of killing with "malice aforethought" and at least of murder in the second degree (T.C.A. secs. 39-2401 to 39-2403). The fact of killing with a deadly weapon raised a presumption of malice and justified a finding of murder in the absence of facts or circumstances rebutting the presumption. *Foster v. State,* 74 Tenn. 213, 214, 216; *Lewis v. State,* 202 Tenn. 328, 332-333, 304 S.W.2d 322.

There were no facts or circumstances sufficient to rebut malice, or so the jury could find. It was not a killing upon a sudden heat of passion so as to reduce it from murder to manslaughter, because of defendant's wife's affair with Smith; for that had been going on three years to his knowledge. He said he shot Smith because "he had been giving me trouble with my wife and seemed like he just wanted to impose on me and I had just really gotten tired of it."

 At the same time, defendant sought to rely upon self-defense. He testified that when he walked back with his pistol to Smith's car, Smith "started cursing and got over in the middle of his seat like and moved toward the middle of the car. It appeared to me that he was trying to get something out of the glove compartment"; and he further said that he knew Smith was in the habit of carrying a pistol.

This the jury did not believe, as their verdict shows. They were the judges of the credibility of the witnesses; and their verdict, approved by the Trial Judge, settled that issue. It also displaced the presumption of innocence that attended defendant below, raised a presumption of guilt here, and put upon him the onus of showing that the

evidence preponderates against the verdict and in favor of his innocence. *Anderson v. State,* 207 Tenn. 486, 495, 341 S.W.2d 385.

Upon full consideration, we think he failed to carry that burden, and that the evidence amply supports the verdict.

Affirmed.