Bob Owens, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

399 S.W.2d 507.

(*Knoxville,* September Term, 1965.)

Opinion filed December 9, 1965.

Petition for Rehearing Denied March 2, 1966.

JACK E. VAUGHAN, Johnson City, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and ROBERT F. HEDGEPATH, Assistant Attorney General, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

There are only three points to be decided in this case:

(1) Whether the written motion for a new trial, filed some fifty-one (51) days after the entry of a verdict and judgment, was timely filed.

(2) Whether the evidence preponderated against the verdict of the jury and in favor of the innocence of the defendant.

(3) Whether the search warrant issued was invalid, and evidence secured thereunder inadmissible, because it was not issued upon "probable cause," in that the information to the affiant stated only conclusions and not factual observations.

In regard to point one, the defendant has ordinarily thirty (30) days from the entry of a verdict or judgment to file a motion for a new trial, subject to time modifications by the rules of the trial court. T.C.A. sec. 27-201. If the judgment is entered some time subsequent to the entry of the verdict (i. e., not on the same day, but on a subsequent day), the defendant has thirty (30) days after the entry of the judgment to move for a new trial.

*Neely v. State,* 210 Tenn. 52, 356 S.W.2d 401 (1962). Also, unless the rules of the trial court state otherwise, the motion for a new trial, to be seasonably made, does not have to be in writing and does not have to state the reasons or grounds for the motion. *Shettles v. State,* 209 Tenn. 157, 352 S.W.2d 1 (1961). The *Shettles* case also holds that this Court cannot consider trial court rules unless they are proved on the trial below and are incorporated in the bill of exceptions.

In *Shettles,* the oral language used in the "motion" for a new trial was (as evidenced by the minutes of the court) :

Thereupon the defendant, through her counsel of record, moves the Court for a new trial herein, which motion is set for hearing on August 2, 1960.

In the case at bar, the oral language, as evidenced by the minutes of the court on the day the verdict and judgment were entered, is : "Thereupon the defendant by his attorney gave notice of motion for a new trial." In the case at bar, the written motion and the grounds therefor was filed, argued, and overruled fifty-one (51) days after the entry of verdict and judgment.

In *Liner v. Jenkins,* 170 Tenn. 1, 91 S.W.2d 289 (1936), it was held that notice of a motion was not the same thing as the motion itself where the rules of the court required that grounds be stated along with the motion. This case cites some old authority for the proposition that a notice of a motion is not the same thing as the motion itself.

■ It is significant, however, that the trial court itself apparently approved this filing of the written motion after the thirty-day period had elapsed, though, of course, it overruled the motion for substantive reasons. Appar-

ently the trial court thought the notice of a motion entered in the minutes the day of the verdict and judgment was sufficient. *Liner v. Jenkins,* supra, is distinguishable in that there a rule of court required certain steps that were not complied with. We agree with the trial court in the case at bar and hold that the motion was timely filed.

On point two we find that the defendant put on no evidence in this case. The State's evidence showed nothing directly of any gambling activity on the Sunday the premises were searched. There is testimony that a number of cars had been on the premises on previous occasions, but it is not clear from the testimony that there were a number of cars there on that Sunday. Some men were found in the four-room house, but apparently they were doing nothing.

An old, incomplete deck of cards was found on a window sill of the house. About $300.00 was found, in bills and change of varying denominations, in some cigar boxes; about $300.00 was found also in a safe. Outside, in the backyard, was found the burned remnants of a "Tip Board," a well known gambling device; also some papers which were headed "American League" and "National League", and had printed places for placing scores and statistics on baseball games were found, but it is not shown that they were used for gambling. Some number notations on a small spiral notebook were found, but the witness to whose testimony they were an exhibit could not identify them positively as baseball ticket numbers, often used for gambling.

It is clear from the evidence, however, that the defendant, Bob Owens, though not present on the premises at the time of the search and arrests, occupied or con-

trolled the house and had been there on previous occasions since his car had been seen there, the unlisted telephone number was in his name, calls came in asking for him at the time the search was going on, and he claimed, as his, the safe and the money found. There is also convincing evidence that the house was not used as a residence.

Defendant was convicted under T.C.A. sec. 39-2036(4):

Whoever as owner, lessee, agent, employee, operator, occupant or otherwise knowingly maintains or aids or permits the maintaining of a gambling premise shall be guilty of a misdemeanor and fined not more than one thousand dollars ($1,000) and in the discretion of the court may be imprisoned in the county jail or workhouse for some period of time less than one (1) year, and whoever does any act in violation of this paragraph.

T.C.A. sec. 39-2033(7) gives the definition of a "gambling premise" for the purposes of T.C.A. sec. 39-2036(4):

"Gambling premise" means any building, room, enclosure, vehicle, vessel or other place used or intended to be used for professional gambling. *In the application of this definition, any place where a gambling device is found shall be presumed to be used for professional gambling.* (Emphasis supplied).

In determining whether there is evidence of gambling devices in this case, the important authority is *Harris v. State*, 207 Tenn. 538, 341 S.W.2d 576 (1960), written for the Court by Mr. Justice Felts. There it was held that a conviction for the possession of gambling devices could not stand where it was not shown that the

device found on the premises was possessed or used for the purpose of gambling, citing the definition of "gambling device" in T.C.A. sec. 39-2033(4).

If any of the objects found in the case at bar can be shown to be gambling devices, there is a presumption of guilt under T.C.A. sec. 39-2033(7). In the *Harris* case, the devices found were "tip boards," but it was not shown that they were actually being used as gambling devices.

We must determine then whether these devices were being used for gambling in order to establish that they are in fact "gambling devices" and, thus, that the presumption of T.C.A. sec. 39-2033(7) applies. Of course, a conviction under T.C.A. sec. 39-2036(4) does not depend on the definition of "gambling device" if it is otherwise shown that these premises were being used for gambling It seems that the evidence is sufficient on this. One obstacle, of course, in proving "gambling premises" without the aid of the presumption is that the proof must be sufficient to show that the gambling was "professional" and not just a group of men having a "friendly" poker game or other game of similar import. The fact that there was over $600.00 found on the premises, belonging to the defendant, combined with the other evidence, is sufficient proof to convict in this case. Of course, we examined the evidence not to determine guilt, but to see if it preponderates against the verdict of the jury and in favor of the innocence of the defendant, plaintiff in error here. The burden is on the plaintiff in error here to show that such evidence does preponderate in favor of his innocence. This he has not done. Therefore, this assignment is overruled.

The final point for decision involves "probable cause" in the issuing of the search warrant. A review of the authorities in Tennessee on this point reveals:

In *Elliott v. State,* 148 Tenn. 414, 256 S.W. 431 (1923), it was held (Chief Justice Green speaking for the Court), that

> * * * when an affidavit is made on information and belief, it should disclose the nature and the source of the information so that the magistrate himself can determine whether probable cause exists for the issuance of the search warrant. If the search warrant might issue on a bare statement that affiant had information leading him to conclude that such a warrant should issue, then the act of the magistrate in issuing the warrant would not be based upon any judicial discretion, but upon the discretion of the affiant. 148 Tenn. at 416, 256 S.W. 431.

In *Jackson v. State,* 153 Tenn. 431, 284 S.W. 356 (1925), the affiant stated that the affiant's reasonable belief was based on the "information by a reputable citizen that whiskey is being sold at the above-described premises * * *." Thus, the affiant's belief was not based on facts constituting the nature of the information, but rather simply on the conclusions of the informant. The warrant was held insufficient.

In *Matlock v. State,* 155 Tenn. 624, 299 S.W. 796 (1927), it was held that a search warrant is defective where

> * * * there is nothing in the affidavit before us to indicate whether the informants of the affiant were not themselves speaking from hearsay rather than from personal knowledge, or were merely expressing a con-

clusion from undisclosed circumstances. 155 Tenn. at 627, 299 S.W. at 797.

In *Stroud v. State,* 159 Tenn. 263, 17 S.W.2d 899 (1929), the search warrant was held sufficient where the statement in the affidavit was that a reliable person claimed to have *heard* the defendant agree to deliver whiskey on the night the search warrant was to be issued.

While it is indisputable that the affidavit must contain the nature of the informant's information, it is, according to *Gallimore v. State,* 173 Tenn. 178, 116 S.W. 2d 1001 (1938), nevertheless the office of the magistrate issuing the warrant to determine himself what particular or specific facts will justify his exercise of discretion— so long as there is *some* material evidence before him. *Lea v. State,* 181 Tenn. 378, 181 S.W.2d 351 (1944), reiterates this point.

It is clear, then, that the facts stated in the affidavit, i. e., the facts upon which the affiant bases his reasonable belief, are not subject to contradiction at the trial for the purpose of suppressing the evidence secured by means of the warrant. This is so because the magistrate determines the verity of the facts, at least he is supposed to, before he issues the warrant. He performs a judicial act which is not subject to review unless there are *no material facts* upon which he based his discretion. *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759 (1959); *Solomon v. State,* 203 Tenn. 583, 315 S.W.2d 99 (1958).

The United States Supreme Court recognized, in the case of *Aguilar v. State of Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, (1964), that an affidavit could not be based on the mere conclusions of an informant, something the Supreme Court of Tennesse has recognized for

at least forty years. Nevertheless, since *Ker v. State of California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, (1963), announced that the standards determining probable cause are the same under the Fourth and Fourteenth Amendments to the United States Constitution, it is of interest to examine the latest United States Supreme Court decisions on probable cause involving federal search warrants.

In *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, (1960), it was held, inter alia, that hearsay is an acceptable basis for probable cause so long as it is corroborated by other information, or so long as there is "a substantial basis for crediting the hearsay." (Of course, as *Aguilar* holds, this hearsay must be direct observation as to facts from the informant and not just the informant's unsupported conclusions.) In *Jones,* the informants stated they had purchased narcotics from the defendants at the premises in question; also the affiant said in the affidavit that he was familiar with the reputation of the defendants. This was held sufficient.

*Jones* and *Aguilar* are reaffirmed in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, (1965), where it was held not necessary to link up particular facts with particular sources of information, or any source of information for that matter, so long as it is stated to be a reliable source or the facts are from personal knowledge of the affiant.

In the instant case the affidavit reads as follows:

Affiant on this date, the date this affidavit bears, was informed by a reliable citizen that he had on the date this affidavit bears seen a large number of people entering said premises to gamble and that gambling was

and is in progress upon said premises on this date and that gambling devices, tips, ball tickets, and other devices are being used in said gambling; and affiant's informer further says that said premises have been used for gambling purposes for several days now and that he has seen numbers of people coming and going to said place, including Bob Owens; and affiant personally knows from court proceedings & records that Bob Owens is engaged in the business of gambling for a livelihood.

■ Admittedly there are stated here some conclusions of the informer. However, there is direct observations of a "large number of people," including the defendant, coming and going to and from the house in question. This evidence is buttressed by the affiant's personal knowledge, from court records, of defendant's reputation as a professional gambler.

■ Finally, there is authority in Tennessee holding that observations of the informer, or the affiant, must be stated to have been made on a particular named date. *Welchance v. State,* 173 Tenn. 26, 114 S.W.2d 781 (1938). The affidavit in the instant case meets that requirement.

■ Plaintiff in error also claims that the seizure of the safe was illegal because it is not a "gambling device" which the warrant said was the only type article to be seized. This objection is without merit because it is reasonable to believe that gambling devices could well be concealed in the safe and it was seized to be opened and searched for such evidence.

All assignments are overruled and the trial court affirmed at the cost of the plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.