FILED
03/05/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 12, 2024 Session

## CITY OF MEMPHIS v. MALCOM GARY

**Appeal from the Chancery Court for Shelby County**
**No. CH-22-1476        JoeDae L. Jenkins, Chancellor**

_____

**No. W2023-01486-COA-R3-CV**

_____

This appeal arises from the denial of line of duty disability benefits to the appellee by a pension board. The denial went before an administrative law judge who reversed the decision of the pension board and determined the appellee was entitled to benefits. The appellant filed a petition for judicial review in the chancery court, which affirmed the ruling of the administrative law judge. This appeal followed. Because the record does not contain evidence showing that the board entered a final determination, we are without subject matter jurisdiction. Accordingly, this appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Barbaralette G. Davis, Memphis, Tennessee, for the appellant, City of Memphis.

Robert L.J. Spence, Jr., Memphis, Tennessee, for the appellee, Malcom Gary.

**MEMORANDUM OPINION[1]**

**I. FACTS & PROCEDURAL HISTORY**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Mr. Malcom Gary was a firefighter employed by the City of Memphis. Mr. Gary suffered two workplace injuries in January 2016, which resulted in him receiving treatment from two on-the-job injury treating physicians. Mr. Gary applied for line-of-duty disability benefits on September 28, 2016.

As part of the benefits application process, Mr. Gary underwent two independent medical evaluations ("IMEs") in late 2016 and early 2017 as required by the City's pension ordinance. Both of those resulted in a determination that Mr. Gary's employment was not the primary cause of his diagnosis, and he was not permanently and totally disabled.[2] As the IMEs did not result in two physicians stating that Mr. Gary was totally and permanently disabled because of his employment with the City, Mr. Gary was scheduled for a third IME. Mr. Gary refused to attend this IME on the advice of his attorney and, as a result, Mr. Gary's application was "closed" thereafter.

It is unclear from the record what occurred in the interim, but sometime later, Mr. Gary attempted to "extend" his line-of-duty benefits application. While doing so, he was informed that his application had been "denied" and thus, he filed a new application on November 20, 2018. There were some initial issues with the second application, but after these were resolved, Mr. Gary was again scheduled for an IME. However, Mr. Gary again informed the City that he would not submit to any additional IMEs on the advice of his attorney. Subsequently, the City sent Mr. Gary a letter dated August 7, 2019, in which it "denied" his request "due [to] the lack of medical evidence from two qualified physicians" which "certifie[d] [him] as totally and permanently disabled and unable to perform the functions of [his] position with the City of Memphis."

Candidly, it is again unclear from the record what took place in the interim, but beginning in February 2021, Mr. Gary's treating physicians and the physicians who conducted IMEs were deposed.[3] The final deposition was taken on May 19, 2021, and

---

[2] Between these IMEs being conducted, Mr. Gary's treating physicians submitted similar forms. One physician stated that Mr. Gary was totally and permanently disabled from his job and the disability was caused by Mr. Gary's employment with the City. The other treating physician stated that Mr. Gary was totally and permanently disabled from his job, but the injury was not caused primarily by his employment with the City.

[3] The record in this matter is quite vexing. Several documents are contained multiple times in different locations throughout the record. The record contains many duplicative copies of several of Mr. Gary's medical records, excerpts of the minutes of the pension board's March 31, 2022 meeting are contained in the record twice, and the same excerpt of the final hearing before the ALJ is contained four times. There are also two copies of the same deposition taken of one of Mr. Gary's treating physicians contained in the record.

There is also little method to the order in which many of these documents were filed. For example, Mr. Gary's 2016 and 2018 line-of-duty benefits applications are contained in the record consecutively despite having been filed almost two years apart and are the final documents in the final volume of the technical record rather than being placed in the record chronologically. Another example of this comes from the transcript of the July 14, 2021 matter being contained in a separate volume of

on July 14, 2021, the parties appeared before administrative law judge George Brown, ("ALJ") prepared for a hearing, although nothing in the record indicates what was filed to bring the parties before the ALJ. The City raised concerns regarding whether the appeal was proper, claiming that Mr. Gary had not completed the administrative process and thus, there was not a contested case ripe for review. After arguments from both sides on the issue, the ALJ instructed the attorneys to discuss how to move forward with the case. The parties then agreed for the application to be reopened and for the medical evidence developed over the litigation to be included in the file. The parties also agreed that Mr. Gary's on-the-job injury treating physicians would be sent forms in which they could give their opinions regarding whether Mr. Gary was permanently and totally disabled, and whether any disability was caused by his employment. On August 4, 2021, a written order formally staying the proceedings was entered, pending the application being reopened and evaluated "in light of the medical evidence adduced herein."

Both treating physicians submitted checklists containing their opinions. One physician indicated that he believed that Mr. Gary did not have a condition which made him permanently and totally disabled, but next to this he handwrote that Mr. Gary was unable to run or to repetitively lift more than 40 pounds. The second physician indicated that he believed that Mr. Gary was physically disabled, the disability prevented him from performing his job, and the disability was caused by his employment. Sometime later, it appears that Genex, the City's third-party administrator, determined that the opinions differed and closed the file.

On March 16, 2022, the parties came back before the ALJ.[4] The ALJ determined that the City had not followed the previous order as the matter never went before the pension board. The ALJ directed that the matter be resolved quickly, and Ms. Regina Lucas, the City benefits manager, agreed to place the matter on the agenda for the pension board's next meeting. According to a transcript in the record, on March 31, 2022, the pension board took up the claim at its meeting and voted to "uphold the decision of the Benefits Manager to deny line-of-duty disability based on medical evidence only." However, nothing is contained in the record preserving the decision of the pension board as a final determination. The record does not contain the minutes of the meeting or any subsequent approval of the minutes. The parties went back before the ALJ on June 15, 2022, for an evidentiary hearing.[5]

---

technical record from the transcript of the conference call which concluded that matter later the same afternoon. Further, several documents are blurry to the point of being largely illegible.

This court encountered a similarly frustrating situation in *Ellis v. Duggan*, 644 S.W.3d 85, 96 n.9 (Tenn. Ct. App. 2021). There, despite various issues with the record which we likened to an "archaeological dig" we reviewed the volumes of record to provide the parties with finality after years of litigation. *Id.* We also cautioned the parties that we may not be so "forgiving and accommodating" in the future. *Id.* We would extend that same caution here.

[4] Again, it is unclear what was filed resulting in the parties coming back in front of the ALJ.

[5] While there are vague references to Mr. Gary's counsel requesting a hearing before the ALJ in

On July 6, 2022, the ALJ announced his decision. The ALJ determined that Mr. Gary had complied with "the spirit" of the City's process and found there was evidence in the record sufficient for findings to be made. Accordingly, the ALJ ruled in Mr. Gary's favor. A written order was entered on September 26, 2022, in which the ALJ found that the medical evidence, when supplemented with the doctors' testimony, satisfied the requirement that two physicians attest to a permanent disability caused by Mr. Gary's employment as a firefighter. The ALJ also found the pension board's decision to be arbitrary and capricious because the medical depositions and other medical evidence were not considered.

On October 27, 2022, the City filed a petition for judicial review in the trial court, again claiming that the issue was not ripe for review because Mr. Gary had not completed the administrative process and, alternatively, that the ALJ's findings regarding the medical evidence were erroneous as they were unsupported by "substantial and material" evidence. The City also claimed that the ALJ's decision was "arbitrary or capricious or characterized by abuse of discretion." The matter came for hearing on September 18, 2023, and the trial court issued an order denying the City's petition on September 25, 2023. The trial court determined that the ALJ did have subject matter jurisdiction over the issue, and the ALJ's ruling was not arbitrary or capricious necessitating a reversal of the decision. The City filed this appeal on October 23, 2023.

## II. Issues Presented

The appellant has presented the following issues on appeal which we have slightly reframed:

1. Whether the administrative law judge had subject matter jurisdiction to hear Mr. Gary's appeal of the pension board's denial of line-of-duty benefits.
2. Whether the finding of the administrative law judge was supported by substantial and material evidence.
3. Whether the finding of the administrative law judge was arbitrary and capricious.

For the following reasons, we dismiss the appeal.

## III. Discussion

Prior to addressing the City's issues regarding the merits of the chancery court's decision, we must first consider whether we have subject matter jurisdiction. *See* Tenn. R. App. P. 13(b). "Subject matter jurisdiction concerns the authority of a particular court

---

the City's petition to the trial court, the record does not contain such a document.

to hear a particular controversy." *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (citing *Landers v. Jones*, 872 S.W.2d 674 (Tenn. 1994)). Subject matter jurisdiction "relates to the nature of the cause of action and relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Id.* (citing *Landers*, 872 S.W.2d 674; *Cooper v. Reynolds*, 77 U.S. 308, 319, (1870); *Turpin v. Conner Bros. Excavating Co., Inc.*, 761 S.W.2d 296 (Tenn. 1988)). As we have previously stated, "[i]ssues concerning subject matter jurisdiction are so important that appellate courts must address them even if they were not raised in the trial court." *First Am. Tr. Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 140 (Tenn. Ct. App. 2001); *see* Tenn. R. App. P. 13(b).

Here, the case is governed, at its core, by the Memphis City Ordinance which establishes the pension review board. Code of Ordinances, City of Memphis, Tennessee at § 4-8-1. The ordinance empowers the pension board "[t]o make *a determination* as to the right of any person to a benefit under [title 4]." *Id.* at § 4-8-7(E) (emphasis added); *see Best v. City of Memphis*, No. W2021-00020-COA-R3-CV, 2021 WL 4190775, at *3 (Tenn. Ct. App. Sept. 15, 2021). Decisions regarding line-of-duty disability benefits under the City's Pension Ordinance are reviewed pursuant to Tennessee Code Annotated section 4-5-322. *Taylor v. Bd. of Admin., City of Memphis Ret. Sys.*, 681 S.W.3d 751, 754 (Tenn. 2023).[6]

Pursuant to Tennessee Code Annotated section 4-5-322, for this Court to have subject matter jurisdiction, Mr. Gary must have first submitted an application to the pension board and the board must have ruled on that application. *See Best*, 2021 WL 4190775, at *4 ("Because the Pension Board is tasked with 'determin[ing] the amount, manner and time of payment of any plan benefits,' Plaintiff was required to formally present the disputes alleged in the complaint to the Pension Board in the first instance.") (quoting Code of Ordinances, City of Memphis, Tennessee at § 4-8-7). The record shows that Mr. Gary did file an application for pension benefits and that, after a great deal of back and forth with the City and several appearances before the ALJ, the application was brought before the pension board. However, the record does not contain a document memorializing the pension board's final decision. Here, there is nothing contained in the record even resembling a final determination of the pension board. The record does contain a transcript from the pension board meeting in which a vote was taken. However, there are no official minutes of the pension board meeting in which a

---

[6] It is not possible to ascertain from the record many of the proceedings which occurred at the administrative level. Therefore, we are unable to determine whether the board proceedings were conducted as a "contested case" pursuant to Tennessee Code Annotated section 27-9-114 (a)(1). However, regardless of whether this case is a "contested case," the Board's decision must be reviewed "'in conformity with the judicial review standards under the [UAPA], § 4-5-322.'" *Davis v. Shelby Cnty. Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009) (citing Tennessee Code Annotated section 27-9-114(b)(1)(brackets present in original)).

vote was taken to deny Mr. Gary's application and no letter or other document in which the board notifies Mr. Gary of a final decision on his application. Therefore, although the board may well have rendered a decision, there is nothing in the record showing that a final decision of the pension board was ever entered.

Tennessee Courts have previously noted the difference between rendering and entering a judgment. *Jackson v. Jarratt*, 52 S.W.2d 137, 138 (Tenn. 1932); *Carter v. Bd. of Zoning Appeals of City of Nashville*, 377 S.W.2d 914, 916 (Tenn. 1964). Rendering a judgment "'is the act of the court'" and means to "'return or give judgment.'" *Jarratt*, 52 S.W.2d at 138 (quoting *Anderson v. Mitchell*, 58 Ind. 592, 594 (Ind. 1877)). Conversely, "[t]he 'entry' of judgment is the ministerial act by which enduring evidence of the judicial act of rendition of judgment is afforded." *Carter*, 377 S.W.2d at 916 (citations omitted) (quotation marks present in original). In the context of a board decision, we have similarly held that "something more than simply a vote taking place is required before a judgment or order will be considered as having been entered." *Grigsby v. City of Plainview*, 194 S.W.3d 408, 413 (Tenn. Ct. App. 2005).

In *Grigsby*, a city beer board voted to revoke a beer permit on February 20, 2003. *Id.* at 410. The holders of the permit filed a petition for writ of certiorari. *Id.* The city filed a motion to dismiss the petition for lack of subject matter jurisdiction, claiming that the petition was filed outside the 60-day window available for the writ of certiorari serving as the mechanism for appeal. *Id; see* Tenn. Code Ann. § 27-9-102. The trial court agreed and dismissed the petition. *Id.*

However, on appeal, we vacated the trial court's decision, as we were unable to determine when the board's decision was entered because the information was not contained in the record. *Id.* at 414. Specifically, we acknowledged that the board's vote to revoke the beer license qualified "as the 'rendition' of the Board's judgment" but "it [fell] short of qualifying as the 'entry' of that judgment." *Id.* at 413 (quotation marks present in original). There was no proof contained in the record "establishing whether anything else happened on February 20th which would [have been] sufficient to properly characterize the Board's judgment as having been entered on that day." *Id.* at 413-14. We noted that the trial court stated that "'the City made a record of this proceeding by way of a court reporter and filed the record as the minutes'" and that this was "all the city has to do to record their judgment." *Id.* at 414 (quotation marks present in original). However, as we pointed out, there was "absolutely no proof in the record showing that a record was made of the proceedings and subsequently filed." *Id.* at 414. We also noted that the record lacked "something more" which would have served as "'enduring evidence' of the Board's rendition of judgment." *Id.* at 414 (citing *Carter*, 377 S.W.2d at 916).

Here, there is a transcript of the pension board hearing contained in the record, but it was not filed as a substitute for the official minutes for the meeting.[7]  Additionally, there is no final document generated by the pension board.  Further, there is no other evidence of "something more" that occurred after the board's vote, which formalized the rendition of the decision as the entry of the decision.[8]  *See Grigsby*, 194 S.W.3d at 413-14.  The record contains only sparse references to Mr. Gary contesting the outcome of case.  One comes from the trial court's order, which states only that the board "denied Mr. Gary's application and this denial was properly returned to the ALJ for review."  We would note that it is possible that a final determination from the pension board may exist.   Regardless, those documents are not contained in the voluminous but yet substantively sparse record.  Accordingly, we are left with no choice but to dismiss this appeal.

We also acknowledge that the City has raised a separate subject matter jurisdiction issue.  However, we have no order in the record from the pension board and this precedes the issue  raised by the City.  Therefore, we will not consider the City's argument because any opinion which we potentially rendered on that claim would serve only as an advisory opinion.  *See State ex rel. Lewis v. State*, 347 S.W.2d 47, 48 (1961) (stating that "[t]he courts of [Tennessee] have no right to render [] advisory opinion[s].")

## IV. Conclusion

Because there is no evidence contained in the record showing that the pension board entered a final determination, this Court lacks subject matter jurisdiction.  Accordingly, this appeal is dismissed.  We remand this matter to the trial court with instructions to remand this matter to the administrative law judge who should then remand this matter to the board for entry of its final judgment in this matter.  Costs of this appeal are taxed to the appellant, City of Memphis.

_____
CARMA DENNIS MCGEE, JUDGE

---

[7] We note that, in the transcript, the board takes action to approve the minutes from prior meetings. Therefore, it is evident that the board routinely follows that procedure in its meetings.

[8] Despite containing many duplicative documents, the record does not contain a thorough breakdown of the administrative process an applicant endures when applying for line-of-duty benefits. However, the letter sent to Mr. Gary dated August 7, 2019, informing him that his second application had been denied also informed him that he was entitled to contest the case within 30 days of the date of the letter and that to do so he was to send a form attached to the letter to the City's representative.  The attached form was not included in the record.  This letter cannot serve as the pension board's final order as it was sent almost two years before the pension board's vote.  However, this letter  provides the only basis we have for determining what procedures Mr. Gary would have been required to follow when contesting his case after the pension board's alleged 2022 decision to deny benefits.