ROBERT LEE INGRAM, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. June 9, 1969.

Certiorari Denied by Supreme Court July 22, 1969.

Hugh W. Stanton, Jr., Memphis, for plaintiff in error.

George F. McCanless, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, William D. Haynes, Don D. Strother, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

GALBREATH, Judge.

This is an appeal in the nature of a writ of error from the action of the Criminal Court of Shelby County in overruling the plaintiff in error's motion for a new trial following a conviction of second degree murder, for which the jury imposed a sentence of not more than seventeen (17) years in the State Penitentiary. This indictment charged murder in the first degree.

The grounds for the motion for a new trial, reiterated in the defendant's assignment of error, were as follows:

(1) There is no evidence to sustain the verdict.

(2) There is no material evidence to sustain the verdict.

(3) The evidence is insufficient to sustain the verdict.

(4) The jury verdict is contrary to the law and the evidence.

(5) The Court erred in overruling defendant's objection to the testimony of Patricia Ann Rivers that defendant struck or beat Barbara Jean Ingram on an occasion prior to the date that she was killed.

(6) The Court erred in admitting defendant's verbal statement to police officers in evidence.

Since the first four assignments of error relate to the alleged insufficiency of the evidence, it will be necessary to summarize the material facts and since they are, for the most part, undisputed, we will rely, where possible, on the defendant's proof.

The defendant and the deceased, Barbara Jean Ingram, had been married for a number of years and were the parents of five children, with whom they had lived, along with three older children of the deceased by other men, until a separation a month or so before the fatal events hereinafter described. It appears that the defendant had reasonable grounds to believe that his wife had been having illicit sex relations with another man known to the defendant as Willie. On one occasion, about two weeks before the slaying, the defendant had observed his wife and Willie, together in his former home as they ate, drank beer, put the children to bed, got into bed themselves with two of the youngest children, and had intercourse. The defendant waited until after Willie left and then entered the house and confronted his erring wife with his accusations, following which little or no trouble ensued, the deceased promising the defendant that she would never admit Willie to her favors again.

In spite of the deceased's protestations of reform, on the night of August 30, 1968, according to the defendant, he again found Willie in his house when he went there to return some money he had borrowed from the deceased. During an argument that developed over the deceased's relationship with Willie, she attempted to strike him with a chair and with a small kitchen pot. The defendant did not take these attempts to do him harm seriously and it was not until he claims she struck him with some sort of iron pipe across the back that he took any retaliatory or aggressive steps himself. He states that he stabbed the deceased, after being struck with the pipe, one time in her side with a knife blade about four inches long. He further claims that in a

struggle over the knife following his stabbing her the deceased accidentally stabbed herself one or more times.

Medical testimony proved undoubtedly that the deceased was stabbed four times, the principal wound, some four and a half inches in depth, having severed an artery in the region of a lung, causing severe hemorrhage and death.

Two of the older children of the deceased testified that they saw the defendant stab their mother four times. The defendant testified he helped the deceased lie down on the floor and reached under her and took the knife and left. He went to the home occupied by his foster father and a niece and there related to them what had happened, saying that he thought he had killed his wife. The next morning the defendant himself called the Police Department and said he wanted to surrender himself. An officer was dispatched to the address given by the defendant. This officer, Detective R. R. Davis of the Memphis Police Homicide Department, testified that after arresting the defendant, he read the Miranda type warnings printed on a card and ascertained to his satisfaction that the defendant understood his constitutional rights and wanted to waive them. En route to the police station the defendant told the detective substantially the same facts that he testified to himself, describing his marital troubles and the final confrontation with his wife, at which time he struck her with a knife, after she had hit him with something. The only substantial difference in the facts related to the arresting officer and the defendant's own testimony was as to the number of times the defendant stabbed the deceased. He told the officer he stabbed his wife several times, whereas, he

testified that he only stabbed her one time.

From the facts testified to by the defendant alone, the jury was justified in finding second degree murder.

"The law presumes malice from the killing with a deadly weapon, but the jury may look to all the facts and circumstances developed by the evidence, either of State or the defendant, to ascertain whether the malice is rebutted, a reasonable doubt enuring to the benefit of the defendant: Bryant v. State, 7 Baxt. 67." Foster v. State, 74 Tenn. 213.

"The admitted fact of * * * killing deceased with a deadly weapon raised a presumption of malice and justified a finding of murder in the second degree, in the absence of facts or circumstances rebutting the presumption. Foster v. State, 74 Tenn. 213, 214, 216; Lewis v. State, 202 Tenn. 328, 332-333, 304 S.W.2d 322; Neely v. State, 210 Tenn. 52, 356 S.W.2d 401." Bostick v. State, 210 Tenn. 620, 360 S.W.2d 472.

The defendant sought to interpose self defense as justification for the homicide. In his testimony from the stand he stated that after being struck in the back by the deceased with a pipe:

"That's when I grabbed the knife and stabbed her in the side, As she had the pipe up, fixing to come down, the knife hit her in the side and I throwed my hand up, her hand hit my hand as it was coming down. I didn't know definitely whether she was going to hit my head with the pipe or what not, but if I had of known that she wouldn't struck my head, I wouldn't have

struck her with the knife, didn't strike her with the knife to kill her, struck her with the knife only because she was striking at me with the pipe. She had hit me the first time and I didn't know whether she would strike me with the pipe about my head or not, but it was a steel heavy pipe and she had her elbow on it. If it had of hit me about the head, it would have knocked a hole in my head. I just might not have been living or I just might have made it. There is a possibility."

The pipe referred to by the defendant was not described by any other witness nor was it introduced as an exhibit and it was in the province of the jury to reject the theory of self defense.

From the whole proof there is presented the type of killing actuated by anger and passion brought about by provocation through the marital infidelity of the deceased that so often characterizes uxoricide.

From all of the above, it is clear that the jury was justified in reaching the conclusion it did and the first four assignments of error are, therefore, overruled.

■ The fifth assignment of error, which addresses itself to testimony of a previous assault made upon the body of his wife by the defendant a week or so before the slaying must also be overruled. One Patricia Ann Rivers, who described herself as being like a sister to the deceased, testified that a week or so before the killing she witnessed the defendant threaten his wife with cutting and, in general, subject her to a beating. The defendant moved the court to exclude this testimony from the jury as irrelevant. 1 Wharton's Criminal Evidence, 12th

Edition, Section 192, comments upon this issue as follows:

"Evidence of the relations existing between the victim and the defendant prior to the commission of the crime is relevant. Thus, it may be shown that the defendant and the victim had prior quarrels, a quarrel over the violation of a compromise agreement, and an agreement to meet and have a fight. It is relevant to show that the defendant had committed acts of violence upon the victim shortly before the commission of the crime, or that the defendant had repeatedly mistreated the victim."

In Holder v. State, 119 Tenn. 178, 198, 104 S.W. 225, our Supreme Court in holding evidence of previous assaults against the deceased by the accused admissible said:

"So far as concerns the general question, we are of the opinion that previous attempts on the life of a person by the accused may be shown for the purpose of exhibiting the animus or state of mind of the accused towards the deceased, as indicating hostility, or a settled purpose to harm or injure that person. Williams v. State, 8 Humph., 585, 593, et seq."

In this same case the Supreme Court quoted from an earlier Wharton's than the one we referred to above and said:

"In Wharton on Homicide it is said: 'Previous attempts to kill the person afterwards killed warrant an inference of express malice or deliberation and premeditation in killing, as a presumption which will

sustain a conviction of murder in the first degree.' Id. (3 Ed.), p. 235, § 155. In the same work it is said: 'Prior attempts by the accused to kill the deceased may be given in evidence, and so may evidence of a prior aggravated assault. And lapse of time between the previous quarrel or difficulty and the homicide goes only to the weight of the evidence. It does not affect its admissibility.' Id., p. 925, § 599. There can be no question, then, of the competency of evidence of previous assaults upon, or attempts to kill, the deceased by the prisoner."

■ Turning now to the last assignment of error as to the admissibility of testimony relating to the defendant's verbal statement to police officers. We find no merit in this assignment for a number of reasons. The defendant had, prior to calling the police, made the same general admissions to his foster father and that person's niece, and the niece so testified. Secondly, it is clearly a question of fact as to whether or not the officer adequately warned the defendant of his constitutional rights. The officer testified emphatically that he did and the trial judge had ample reason to believe the officer. The trial judge was the proper one to pass upon the credibility of the witness on this point and in the absence of an abuse of his discretion in this regard, we cannot substitute our judgment for his. Lastly, this assignment of error is without merit because the defendant went upon the stand and testified in substance to the same facts he related to the arresting officer. This cured any error that might have been involved in admitting proof of his inculpatory statements. As was held in Hill v. United States, 5 Cir., 363 F.2d 176 (1966):

"We reject this assigned error for a second and entirely different reason. When Hill testified in his own behalf, he substantially repeated the accountant's testimony which is complained about in this assignment. If there was any error in the admission of the accountant's testimony, it was cured by Hill's testimony to the same facts. See Barshop v. United States, 192 F.2d 699 (5th Cir. 1951), cert. den. 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952). Thus we find no prejudicial error in the admission of the accountant's testimony, or the trial court's refusal to withdraw it from the jury's consideration." 363 F.2d 180, 181.

The officer's testimony did little but corroborate the defendant's own testimony by which he sought to prove justifiable homicide and probably was helpful in gaining an acquittal of murder in the first degree.

As noted at the outset, the jury fixed punishment at not more than seventeen years. In pronouncing judgment, the court did not specify the minimum sentence fixed by law under T.C.A. § 39-2408. Under authority of such cases as Montesi v. State, 220 Tenn. 354, 417 S.W.2d 544, the judgment is modified to set out the minimum sentence of not less than ten years.

Finding no reversible error, we affirm the judgment of the lower court, as modified.

OLIVER and WALKER, JJ., concur.