IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2001

**STATE OF TENNESSEE v. MICHAEL P. MALLEY**

**Direct Appeal from the Criminal Court for Shelby County
No. 97-11135     W. Otis Higgs, Jr., Judge**

---

**No. M2000-00041-CCA-R3-CD  - Filed February 23, 2001**

---

The defendant was convicted by a Shelby County jury of assault, a Class A misdemeanor.  He was sentenced to the maximum term of eleven months and twenty-nine days, to be served as a split sentence with five months and twenty-nine days served in confinement at the workhouse, and the balance served on probation.  In this appeal as of right, the defendant asserts that the trial court erred in allowing the victim, his former wife, to testify as to two other bad acts committed by the defendant, one a prior beating incident and the other an act of vandalism of the victim's car.  Having reviewed the entire record, we conclude that the trial court did not abuse its discretion in allowing the testimony.  Judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Ivan D. Harris, Jr., Collierville, Tennessee, for the appellant, Michael P. Malley.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Camille N. McMullen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Michael P. Malley, was convicted by a Shelby County jury of assault, a Class A misdemeanor.  He was sentenced to the maximum term of eleven months and twenty-nine days, to be served as a split sentence with five months and twenty-nine days served in confinement at the workhouse, and the balance served on probation.  A fine of $500 was also assessed.

In this appeal as of right, the defendant asserts that the trial court erred in allowing the victim to testify concerning other bad acts committed by the defendant.  Having reviewed the entire record, we conclude that the trial court properly allowed this testimony into evidence.

## FACTS

The proof shows that on April 11, 1997, at approximately 7:30 p.m., the defendant, Michael Malley, and a friend, Coy McKaughan, arrived at the Memphis home of Malley's former wife, Audra Malley,[1] and the couple's two children. Ms. Malley and the defendant had married in May of 1989 and divorced in August of 1994. Their children were ages five and seven at the time of the offense. Apparently, the defendant spent some time in Florida after the divorce and, upon returning to Memphis in 1995, started living again with Ms. Malley. Their life together can be aptly characterized as destructive, violent, abusive, and plagued by alcohol and drugs. On the evening in question, the defendant was late getting home because he had been drinking beer with his friend. Ms. Malley was angry that the defendant was late because she thought he was taking her out that evening. Ms. Malley had been drinking vodka and had consumed a substantial amount.

What started as a yelling match, escalated. The defendant smashed a glass against a wall and then moved on to assault Ms. Malley, hitting and shoving her. She suffered a sprained wrist, bruises, and knots on her head as a result of the assault. Part of the episode was inadvertently recorded when the defendant's young daughter left the remote telephone receiver in the "on" position after having tried to reach her aunt. This tape, introduced as evidence, reveals an abusive, domestic altercation but is not conclusive as to an actual assault.

After the defendant and McKaughan left the house, Ms. Malley took her children and sought refuge at the home of a friend. Ms. Malley saw a chiropractor, Dr. Alan James, who testified that approximately a week after the charged offense, he took X-rays of the victim's wrist and determined that there were no fractures to the wrist. Dr. James's diagnosis at the time was a soft tissue injury with swelling.

## ANALYSIS

### Admissibility of Testimony of Other Crimes, Wrongs, or Acts

The defendant does not dispute his presence at the time of the offense or that he threw the glass; he argues instead that no assault took place and that Ms. Malley was simply lying. The defendant suggests that Ms. Malley was so drunk that her injuries were caused by her own stumbling and falling. As part of the State's case-in-chief, the victim, Ms. Malley, was allowed to testify concerning: (1) a prior uncharged assault by the defendant, including photographic evidence of her injuries; and (2) a prior uncharged act of vandalism committed by the defendant on Ms. Malley's car. The defendant contends that the trial court erred in permitting testimony of these prior bad acts. Specifically, the defendant argues that the testimony was not relevant. Even if relevant, the defendant argues that the testimony should have been excluded according to the balancing test of

---

[1] By the time of the trial in this case, July 1999, Audra Malley had remarried, and her name is now Audra Bolton. In the interest of clarity as to the parties, we will refer to the victim as Ms. Malley.

Tennessee Rule of Evidence 404(b)(3) because the danger of unfair prejudice to him outweighed any probative value. The State relies on State v. Smith, 868 S.W.2d 561, 574 (Tenn. 1993), for the proposition that the evidence was properly admitted as relevant to establish intent in this case by showing the violent nature of the relationship between the victim and the defendant prior to the commission of the charged offense, and the defendant's hostility toward the victim.

This issue is controlled by Tennessee Rule of Evidence 404(b), which provides as follows:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Additionally, the trial court, before admitting such evidence, should find clear and convincing evidence that the prior crime or bad act was committed by the defendant. See State v. Parton, 694 S.W.2d 299, 301 (Tenn. 1985). Where the trial judge has substantially complied with procedural requirements, the standard of review is abuse of discretion. See State v. Lester Douglas Bell, No. 03C01-9712-CR-00541, 1999 WL 436432 (Tenn. Crim. App. June 29, 1999), perm. app. denied (Dec. 20, 1999) (citing State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997)).

Generally, Rule 404(b) is one of exclusion, and evidence that an accused has committed some other crime or bad act independent of that for which he is charged is inadmissible, even though it may be a crime or act of the same character as that for which he is on trial. See State v. Howell, 868 S.W.2d 238, 254 (Tenn. 1993), cert. denied, 510 U.S. 1215, 114 S. Ct. 1339, 127 L. Ed. 2d 687 (1994). If, however, evidence that a defendant has committed a crime separate from the one for which he is being tried is relevant to some matter actually in issue in the case on trial, such as the defendant's motive, identity, intent, the absence of mistake, opportunity, or as part of a common scheme or plan, and if its probative value is not outweighed by the danger of an unfair prejudicial effect, the evidence may be properly admitted. See Bunch v. State, 605 S.W.2d 227, 229-30 (Tenn.

1980).  The balancing test here is one that tips readily in favor of exclusion since the danger of unfair prejudicial effect must simply "outweigh" the probative value.  Legal authorities support this restrictive approach "because 'other act' evidence carries a significant potential for unfairly influencing a jury."  Neil P. Cohen et al., Tennessee Law of Evidence § 4.04[8][e] at 4-79 (4th ed. 2000).  "Having heard about the 'other act,' a jury may be more inclined to find the defendant guilty of the act charged."  Id. § 4.04[8][a] at 4-77.

The defendant asserts that the trial court failed to meet the conditions mandated by Rule 404(b) before testimony of other bad acts can be properly admitted.

## I.  Jury-Out Hearing

First, the defendant asserts that the trial court failed to hold a jury-out hearing on the admissibility of 404(b) testimony.  Although the defendant did not request a hearing outside the jury's presence, the record indicates that the jury was not present when the State and the defendant argued the issue before the trial court on the first day of trial.  The jury was also not present on the second day of trial when the defendant renewed his objection to the testimony of Ms. Malley and requested that the trial court state on the record how the conditions that must be satisfied before testimony of prior bad acts can be properly admitted had been met in this case.  We conclude that a hearing on this issue was conducted out of the presence of the jury.

## II.  Material Issue

Second, the defendant asserts that the trial court never determined the relevancy of the testimony of the victim, that is, what material issue existed, other than the mere fact of the defendant's propensity to commit the kind of offense with which he was charged.  The trial court stated on the first day of trial during the hearing out of the presence of the jury that the evidence being offered by the State established "a pattern of conduct between parties during the course of their marriage."  Later, on the second day of trial, at the request of the defendant and outside of the presence of the jury, the following colloquy occurred:

> MR. HARRIS:  404(b) provides that the Court must determine that a material issue exists other than the conduct conforming with the character trait, and must upon request state on the record the material issue.
>
> THE COURT:  Well, the material issue is whether or not he intended to do what he did, whether he intended to do those matters as alleged in the indictment I'm stating it for the record.  That's the material issue, did he intend to do what he did.  And I'm admitting this other evidence of other crimes to prove intent.
>
> I mean, we can go on and on and on with it, but that's basically what I'm doing.

-4-

MR. HARRIS: That's fine.

THE COURT: I think it's relevant and I'll say it again for the record it's relevant under 404(b), it's evidence of other crimes. And I will tell the jury that the defendant is on trial for the matters and things alleged in the indictment, and they are not to consider this evidence for any other purpose other than the limited - - under the limited Charge that I'm giving. . . .
    I mean the baseball bat incident - - all of these incidents, in my judgement, are relevant as these incidents go to the ultimate issue of whether or not this gentleman did plan to do what he did, whether he intended to do what he did. And for that limited purpose I think is relevant, and I think the record adequately reflects my reasoning.

According to statutory law, a person commits an assault who "intentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1) (1997). Thus, by proving beyond a reasonable doubt that the defendant acted intentionally, that is, it was the defendant's "conscious objective or desire to engage in the conduct or cause the result," id. § 39-11-106(a)(18), the State would thereby also establish the lesser culpable mental states of acting knowingly or recklessly. See id. § 39-11-301(a)(2).

As early as 1907, our supreme court stated, "[W]e are of the opinion that previous attempts on the life of a person by the accused may be shown for the purpose of exhibiting the animus or state of mind of the accused towards the deceased, as indicating hostility, or a settled purpose to harm or injure that person." Holder v. State, 119 Tenn. 178, 104 S.W. 225, 234 (1907) (citation omitted) (determining that evidence that the defendant had put rat poison in his family's food, including the victim's food, on an occasion prior to the shooting of the victim was admissible). Our supreme court has stated that "evidence of other crimes committed by the accused similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent, which is necessary to constitute the crime charged." Mays v. State, 145 Tenn. 118, 238 S.W. 1096, 1103 (1921). Cases following enactment of the Tennessee Rules of Evidence have interpreted Rule 404(b) consistently with these early cases. In State v. Smith, 868 S.W.2d 561 (Tenn. 1993), the defendant objected to testimony of two incidences of domestic violence prior to the murder of his wife and her two sons. Our supreme court determined that the testimony was admissible and noted, "The evidence of these violent episodes was admitted not to prove the Defendant acted in accord with this character but as part of the proof establishing his motive for the killings." Id. at 574. In State v. DuBose, 953 S.W.2d 649 (Tenn. 1997), the issue was the admissibility of testimony concerning injuries sustained by the sixteen-month-old son of the defendant prior to the fatal injuries. The DuBose court found the evidence relevant to intent and absence of accident:

Since the defendant claimed the injury was accidental and, apparently in the alternative, if the injury was inflicted intentionally it could have been done by others, proof that he was responsible for the prior

-5-

> injuries was highly probative of both his intent to harm the child and also that the fatal injury was not accidental.

Id. at 654.

In Ingram v. State, 443 S.W.2d 528 (Tenn. Crim. App. 1969), this court determined that testimony of a witness concerning a prior domestic altercation between the defendant and victim was admissible. Id. at 530. In Ingram, the defendant had been convicted of second degree murder of his wife. The testimony to which the defendant objected was that of his deceased wife's best friend, who testified that, just one week prior to the killing, she saw the defendant subject his wife to a beating and heard the defendant threaten his wife with cutting. In so determining, this court stated that such evidence was relevant to show "'that the defendant had committed acts of violence upon the victim shortly before the commission of the crime, or that the defendant had repeatedly mistreated the victim.'" Id. (quoting 1 Wharton's Criminal Evidence § 192 (12th ed. 1955)). In another case predating the Tennessee Rules of Evidence, State v. Glebock 616 S.W.2d 897 (Tenn. Crim. App.), perm. app. denied (Tenn. 1981), this court determined that evidence of two prior incidences of abuse of the victim were relevant. Id. at 905-06. The Glebock court stated: "The relations existing between the victim and the defendant prior to the commission of the crime are relevant. These relations indicate hostility toward the victim and a settled purpose to harm or injure her." Id. More recently, in State v. Larry Gunter, No. 03C01-9605-CC-00183, 1997 WL 798779 (Tenn. Crim App. Dec. 17, 1997), perm. app. denied (Tenn. Sept. 21, 1998), this court concluded that evidence that the defendant had previously threatened his former girlfriend was relevant to show the defendant's intent, motive, and absence of mistake. Id. at *5. Similarly, in State v. Lester Douglas Bell, No. 03C01-9712-CR-00541, 1999 WL 436432 (Tenn. Crim. App. June 29, 1999), perm. app. denied (Tenn. Dec. 20, 1999), this court was faced with the issue of the admissibility of statements from the victim implying that the defendant had abused the victim in the past, including the statement that the victim "'knew there would be a fight, verbal or physical.'" Id. at *4-5. This court concluded that the statements "tend to show, as the state argues in its brief, that the injuries to the victim were not accidental." Id. at *5.

The objectionable testimony here involved two separate prior bad acts. The first occurred in 1993 on the night before the victim filed for divorce. Ms. Malley testified that "Michael came back into the home after he had already left – we were separated – and beat me for six hours until he finally passed out from the drinking. And I woke up to my alarm clock waking me up to go to work the next morning." She described the incident as "about six hours of being hit and thrown against things." Four photographs taken of her injuries were entered as an exhibit. The second bad act to which Ms. Malley testified occurred approximately two months after her divorce when the defendant came to the apartment where she was living with their two children and her sister. Ms. Malley testified that she saw the defendant "[t]aking a baseball bat and knocking every window and the top of my new car out." The police were called as a result of this incident.

The defendant offered the testimony of Coy McKaughan, to the effect that the defendant never hit the victim and the testimony of Becky Parker that the victim was "stumbling" drunk, all

to support the defendant's position that he never hit the victim and that her injuries were self-inflicted. Testimony that the defendant had hit the victim in the past and caused damage to her property were relevant to show that the defendant intended to harm and frighten the victim on the night of the offense. In light of the foregoing, we conclude that the trial court properly ruled this testimony, including the photographic evidence, relevant to the material issue of the defendant's intent to assault the victim.[2]

### III. Balancing Test

As to the final assertion of the defendant, that the trial court failed to properly apply the balancing test for admissibility of prior bad acts evidence pursuant to Tennessee Rule of Evidence 404(b)(3), we agree that the trial court misstated the test during the first jury-out hearing as being "does it substantially outweigh—is the prejudicial effect substantially—does it substantially outweigh the probative value?" This is the test for exclusion of relevant evidence pursuant to Tennessee Rule of Evidence 403, which states:

> **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** — Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This is a far more lenient test for determining admissibility of evidence than that of 404(b)(3) where the danger of unfair prejudice excludes relevant evidence of prior crimes, wrongs, or acts when probative value is merely outweighed by the danger of unfair prejudice. In this case, the trial court clarified the test it was applying when the defendant renewed his 404(b) objection at the beginning of the second day of trial. At that point, the trial court noted the following:

> I think whatever the prejudice might be, and I'm saying it again for the record that it is - - the probative value outweighs the particular prejudice because the defense in this case, as I listened to your questioning, you cross examined this lady in an effort to demonstrate that she was at fault, that she caused it, that this defendant did what he did because she caused it.

---

[2]As to the photographic evidence, Tennessee courts "follow a policy of liberality in the admission of photographs in both civil and criminal cases." State v. Morris, 24 S.W.3d 788, 810 (Tenn. 2000), cert. denied, ___ U.S. ___, 121 S. Ct. 786 (2001) (citing State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978)). The photographs introduced here showed bruising to the victim's arm, leg, and head.

We conclude that the trial court used the proper test for balancing the probative value of the testimony against its danger of unfair prejudice to the defendant.[3] The trial court did not abuse its discretion in concluding that the probative value outweighed the danger of unfair prejudice, given the relevance of the evidence to show that the bodily injuries sustained by the victim were caused by the defendant rather than being accidental.

## CONCLUSION

Finding no reversible error in the issue presented here, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

---

[3]A specific finding that the evidence is "clear and convincing" that the defendant actually committed the other crimes or bad acts was not made. Nevertheless, this additional test, mandated by State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985), and adopted by the Tennessee Supreme Court's Advisory Commission on Civil Procedure for use with Rule 404 (b), was met in this case.